Very well, you may proceed. You can adjust that microphone. Good morning, Your Honors. May it please the Court, my name is Shelby Larson. I am an attorney with Larson Law Firm in Minot, North Dakota. I'm here today on behalf of the Plaintiff Appellant, Nick Meyer. We appeal today from the District Court's October 1st order granting summary judgment in favor of McKenzie Electric. Nick Meyer needs this Court's help today to allow a jury to resolve the factual issues surrounding the relationship between 4T Construction, McKenzie Electric, with respect to their retained control and the existence of negligence, duties thereof, and those breaches of those duties. Nick Meyer was an employee of 4T Construction and in January of 2015, 4T was working for McKenzie Electric and Nick Meyer was there to replace electric lines. The lines on that project were hot, meaning live. At some point, for whatever reason, Nick made contact and was electrocuted. Now, 4T had worked for McKenzie Electric for nearly eight years at that time. They had gone through multiple years of what they call an independent contractor contract. It's listed as a multiple project agreement for contractor services. What's interesting about this document is McKenzie admits they didn't really write it. They took it from a different department and forced it to work in this situation. Does it have an express provision on right to control? Real words about the right to control the work, which I understand is a key in North Dakota. I don't know that it expressly states that, but the acts of the parties, specifically Steve Lautenschlager, who is the manager of McKenzie Electric, would meet with John Gulley sometime during the year to go over this contract, sign it, never fill out any other portions of it, and do what they call negotiating the price for that year. That negotiation didn't really involve 4T coming and saying, here's our bid. It's these two guys sitting around saying, this is what we will pay you, take it or leave it. And so that kind of negates the whole independent contractor concept. They're free to bid, but if they want the work, they're going to continue with McKenzie's... What about the FLEC case? FLEC case, it says daily inspection is not enough to give rise to liability in North Dakota. Well, inspection is different than control. And if you'll, in the deposition of Mr. Lautenschlager, he would even say that on a Saturday on a weekend, when he wasn't on his 9 to 5 with McKenzie Electric, he'd be out driving around, checking on these guys. And he'd stop. He'd stop and say, we're not happy with you, fix this. I've gotten a call from our customers, they're not happy about gates, they're not happy about that. Did he also, did he really say he had never stopped a crew while it was working? Did he say those flat words? That he had never stopped a crew? Never stopped a crew while it was working? I don't believe he said that. He would go to whoever was the head man. Appendix 467, I haven't looked at it to be very honest, but where he supposedly said he had never stopped a crew while working. And that may be a turn of words. The crew itself would be the underlings. He stated that he would go and find the head guy and give them a good chewing. So that the people underneath them would go and do what he wanted. So whether that's stopping a crew or directing a crew and controlling them is at issue. While we're on the slide, do you want to talk about the Schlenk case? I think it's Schlenk, Schenk, S-H-L-E-N-K case. S-H-L-E-N-K. 1983, Northwestern Bell Telephones, the other side. Oh, forgive me. I can help you by telling you that that's where the employer kept the right to do about everything. I mean, that's probably a slur on North Dakota, I don't mean that. Where the employer kept an awful lot of rights. Designate the order of works, specify the quality, make additions, changes to the work being done, prohibit the use of equipment, inspect, even the last ones take over the work if the contractor fails to conform to the terms of the contract. As I understand there, they said it was an independent contractor. Are you familiar with the case? Just tell me if you're not. I am, it's escaping me, Your Honor. Okay, proceed, go ahead. Secondarily, the district court has also stated that North Dakota does not recognize a claim for ultra-hazardous or strict liability. I think importantly I'd like to note that recognizing and knowing the existence of something aren't one and the same. That lower court relies on a case in North Dakota that's decades old. Is that the Worth case? Yes, Your Honor. It is the only North Dakota case that's pretty much on point though, right? It is, and in that instance, a farmer was driving his tractor with an auger, has a big arm, drove under power lines and contacted the power lines. Wholly different set of facts. That line was there. He does it working on it. He didn't make any changes to it. He didn't have any opportunity to turn it on or turn it off. And throughout the decades, we've now come to where watching these power lines is much different than 40 years ago, and turning them off and on to work on them is simpler. In some of the facts, it's been stated that 4T could go knock on some doors and say, we're going to turn your power off for a little bit. Mackenzie Electric has the ability to go through their calling tree and notify them. It's a relatively simple thing to do. And so, you know, while power and electricity in and of itself is not inherently ultra-hazardous or dangerous, working on a hot line when you have the opportunity to just turn it off is. And I'm running into my reserve time now. You may reserve. Thank you. Mr. Stock, we'll hear from you. Thank you, Your Honor. Thank you, Your Honors. May it please the court and counsel, my name is Robert Stock. I'm the attorney on behalf of Mackenzie Electric Cooperative, the appellee in this case. Today, we are asking this court to affirm the district court's decision on a motion for summary judgment, dismissing appellant's claim in total. Mackenzie Electric, in this case, hired an independent contractor for 4T Construction to construct, or not construct, but reconfigure, replace lines on the Baird Den Road reconductor project and hired that independent contractor without any retained control, either contractually or actually exercising actual retained control over 4T as well. Also, Your Honor, plaintiff's hazardous work claim fails for four separate reasons. One, we believe they waived that claim as they never addressed the ultra-hazardous activity claim in the motion for summary judgment briefing. Two, North Dakota has never recognized strict liability for ultra-hazardous activity. Three, even if they had, the transmission and maintenance of power through transmissions lines was already decided in the Worth case not to be ultra-hazardous activity and to be within the province of the legislature. And four, Mr. Meyer is not part of the class that is protected by the ultra-hazardous activity doctrine as he is an employee of an independent contractor and not protected by that doctrine whatsoever. I first want to point out there was some discussion in the summary judgment briefing regarding analysis of an employee versus independent contractor. That's not the analysis here. This is a standard Section 414 retained control case. There's no plausible argument that 4T was an actual employee. In fact, it would create a very absurd result because we have to remember the district court actually granted motion for summary judgment on an indemnity claim that we brought against 4T construction. Certainly the court couldn't do that against an employee. And frankly, plaintiffs wouldn't want that result because if 4T was an employee, the WSI, workers' compensation immunity, would apply, and they'd have no claim from that reason alone. So we're back in the position of this being a retained control case under Section 414, Your Honors. As this court is well aware, the standard is there is no liability for torts of an independent contractor hired by an employer. And in fact, the employer that hires that independent contractor has no duty to an employee of an independent contractor. Unless the employer retains control over the work, right? Absolutely, Your Honor, and that's the exception, right? So is Lawton Slager's deposition enough about how many times he was doing so much supervising? Absolutely not, Your Honor. I think that deposition testimony was taken wildly out of context. If you look at that page, I think it was 470 in the appendix. He actually stated all he did, Your Honor, was drive out on Saturdays with his wife to go look at a project and say, look, here's where we are. Yeah, they have so many poles left. We need to, you know, I need to do the next job for them. Or, oh, hey, there's a hole in the fence. I need to get that fixed before a landowner calls me and is upset at me. The question, in fact, is whether or not you exercise actual, retain control over the method, manner, and operative detail, the step-by-step work that was doing by 4T. And here, clearly, McKenzie Electric had not. In fact, Mr. Lawton Slager testified that how the process went was that he would have a variety of work orders in his drawer. Jared DeHaven or John Gulley from 4T Construction would walk into his office. He would open his drawer and say, oh, yes, here's the next work order. It's for the Bear Den Reconstruction, you know, reconductor project. He would then leave. He'd give him a staking sheet and a work order. He would then leave. He would come back in five days or whatever that is and say, you know, hey, Steve, we're done. He would look in his drawer and figure out the next project and give it to him. That's literally all the instruction that was given. And I would actually point the court to the task order, which is at Appendix 253. The work order and the staking sheets were at 271 and 280. So in this case, right, you can either have contractual language that would retain control within the contract. Here we clearly do not have that. At Appendix Page 250, Section 1.5 of the contract, it specifically provides that 4T Construction is an independent contractor without supervision by McKenzie Electric, quoting from the contract. So the only other way that we could have retained control was actually exercising retained control out on the project, and that simply did not happen. And again, I'd ask the court to look at that. So the task order merely lists the very vague term of we will issue work orders for projects, right? The task order is attached to the contract between MEC and 4T. As a result of that, a work order is issued, and I'd urge the court to look at that at Appendix 271. That work order literally only lists the project name and what they are to do, meaning replace size number 2 transmission lines with 2-0 lines. That's literally what it says. It doesn't go past that. What we would need from all the case law, Your Honor, which is heavy, is that you would need more than that. That work order would have to say, look at 4T. This is how you replace the reconductor line or the transmission line. This is how you replace the neutral line. And frankly, it doesn't say that. Attached to the work order, Your Honors, would be staking sheets, and all those staking sheets show is the location of poles and the length of wire. So in this case, I believe it was 21 poles, 250 feet between those poles. That's all those staking sheets show. That's it. Those documents are consistent with the testimony of the various witnesses as well, Your Honors. The 4T witnesses, John Gulley, who was the owner and president of 4T, specifically testified that McKenzie provides no day-to-day operational management of how they do the job. Lance Wood, who was a member of one of the 4T crews, testified to the same. And Jared DeHaven, who was actually the project manager on the Baird Inn reconductor project and foreman for 4T, says the same, and I just wanted to quote it very quickly, Your Honor, because it distinctly says what kind of control we have. They're not out there, and this is at Appendix 321, Your Honors. They're not out there watching us every minute of every day, making sure that we're complying with. It's up to us to provide our own safety program and make sure that our employees are doing things in a safe manner. And they in no way try to dictate how it is that we are doing the work we're doing. And that's from the project manager himself. The North Dakota Supreme Court has recognized a cause of action for retained control under Section 414. I'm quoting from it. Yes. Yes, Your Honor. Absolutely. Have they ever found it? Have they ever found retained control under 414? It's a sincere question. I didn't mean to make light of it. And the reason I'm laughing is, Your Honor, I'm not sure they have. I think you quoted the one case. I didn't find one. They've got several lists of cases. You're right, Your Honor. And what I would say is that I think it was the Stenkel case that you mentioned that is on the one far side of this, right? But that case is also consistent with the restatement comments. And if you look at the facts that the plaintiff is urging is retained control in this case, they are actually all addressed by the comment C of Section 414. If plaintiff's facts, even if true, they don't social control or only oversight. And, of course, this Court knows that some oversight is expected and allowed under the law and the comments to Section 414. So let's look at that. They say that McKenzie Electric assigned projects. They say McKenzie Electric provided project specifications. I may have found one because they say conversely in Madler, M-A-D-L-E-R. Do you know the facts of Madler, a North Dakota 1991 case? I do not, Your Honor. I do not. It may go the other way, by the way. The Court phrases it in Rogstad. Yes, correct, Your Honor. It may go the other way, but I'm sorry I don't have that case. You don't know it either. I don't know it either, Your Honor. And what I would say is that this case is much less control than a myriad of cases that this Court has decided, including Kronberg and Vandewarker, which are two very recent oil field related cases. And, again, this case is consistent with what the comments are with respect to the Section 414 as well. And I quickly just use the house example. If I bring somebody in to paint my house, an independent contractor to paint my house, I simply can tell them I want it blue, and then at the end of the day, I can come in and make sure it's blue. And that's literally all that's happening in this case. And, actually, the fact pattern regarding how the neutral wire was changed out in this case is indicative of exactly the kind of lack of control that McKenzie Electric has. In that case, they figured out during this project that the neutral wire needed to be exchanged. Jared DeHaven from 4T called up Steve Lautenschlager from MEC and says, hey, look, I think it's a number 2, and it needs to be a 2-ought, right? Steve says, okay, if that's the case, Jared, then change out the neutral wire. And that's all that happens. He literally gives him the okay to change out the neutral wire, and then 4T goes and figures out how to change out that neutral wire. And it's 4T that decided to do this work while it was hot. They didn't even ask MEC. And I just think that's indicative of the lack of control of McKenzie Electric. Really, the question, Your Honors, is was 4T entirely free to do the work its own way with respect to the Bear Den Road reconductor project? And, clearly, it was. I briefly just want to address the ultra-hazardous activity claims. Again, I think that fails for four different reasons. One, the argument was not addressed in the summary judgment briefing. I believe they waived that argument by not addressing it. Two, North Dakota has never recognized the cause of action for strict liability. In ultra-hazardous claims, I direct the court to the Otto case out of actually the District of Montana, in which that court goes through the numerous North Dakota decisions, including Meld, Branham, all of those cases in which Judge Hovland and the District of North Dakota have decided that there is not a cause of action. Is the only state case worth on that? Directly on the transmission of electricity, yes, Your Honor. So that's, I guess, my third point, Your Honor, is that the North Dakota Supreme Court has already decided that the transmission and maintenance of electricity is not an ultra-hazardous activity within the Worth case. There is no distinction between the maintenance of transmission lines and the buildings of transmission lines, and that is because of the last point, right? Mr. Myers is not within the class of protected persons. The District of North Dakota, specifically in Branham, relies on the North Dakota Supreme Court case of Fleck in providing that an employee of an independent contractor is not protected by strict liability and ultra-hazardous activities. And that's black-letter law that protects the public, correct, Your Honor, and not the person that's actually doing the ultra-hazardous activity, and that's what we would have here. So in the end, Your Honor, we ask this court to affirm the District Court decision on summary judgment. There is no duty to Mr. Myers in this case based on the fact that his employer, 4T Construction, was an independent contractor of my client, McKenzie Electric, and McKenzie Electric retained no control either contractually or actually exercised any retained control over 4T Construction. And lastly, plaintiff's ultra-hazardous claims fail for the four reasons that I just listed. If the court has no further questions, I'll sit down. Thank you, Your Honors. Thank you for your argument. Ms. Larson, would you care to make a rebuttal? All right, we'll hear from you now then. Thank you. Firstly, I would like to very quickly address McKenzie's contention that our ultra-hazardous claim was not part of the summary judgment. We brought that up in the pleadings in our complaint, and they cannot rely on the fact that our response to their summary judgment did not specifically include definitions and a word-for-word point heading as to those claims. It was raised in the complaint. It's been dismissed by the lower court. It's properly been brought. Second, with respect to McKenzie Electric's contention that these task orders and work orders merely said, here's the polls, here's the line, go out and do that, what a jury would need to hear is that the facts in this case aren't necessarily on paper. They're contained within the heads and testimony of Mr. Lautenschlager, Mr. Scruppi, John Gulley, Lance Wood. When Lautenschlager interviewed and decided to hire Forti, he himself had the experience as a lineman. He kind of sat down and questioned these gentlemen and found that they knew what they were doing. So he didn't have to tell them specifically, but he would only give them parts of things at a time. They didn't have the ability to determine how much they would do. They were only given small portions at a time of one entire project. Now, who was the principal person who did that? How do you pronounce his name? Lautenschlager. Was he on the site quite frequently? From his deposition testimony, it sounds like he drove by quite a bit and there were phone calls. They'd check in. Are you saying that he must have observed the – well, I shouldn't say must have, but that he would have probably observed something if he had noticed that they were violating some standards of care in the electrical industry? In other words, if he had seen Mr. Meyer approach too closely to the hot wire, would he have done something? Could he have done something? He could have absolutely told them to stop or not. Is there any evidence that he observed any of that? Based on the testimony for that specific instance in January, nobody from McKinsey was present. So is it your argument that they had a continuing duty, no matter what the contract said, to make sure that the work was being done in a safe manner? Yes. They should never have allowed 4T to work on a hot line. By reason of the very nature of the project that was being carried out. They knew the details of how close the 4T's workers would come to the energized line? It's not new construction, so yes, in order to change out those lines, you have to be within a certain distance, and the probability of contact is high. Thank you. So on behalf of Nick Meyer, we respectfully request that this court would reverse summary judgment, remand it back for a trial, or order the district court to certify the question to the North Dakota Supreme Court. Very well. Thank you for your argument. The case is submitted, and the court will file an opinion in due course. Thank you to all counsel. You are excused.